IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PATRICK B. VALCARCEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17-CV-00735 |
| | ) | |
| ABM INDUSTRIES/DIVERSICO INDUSTRIES, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

Plaintiff Patrick B. Valcarcel, proceeding pro se, alleges that his former employer, Defendant ABM Industry Groups, LLC ("ABM"), discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"). Before the court is ABM's motion for summary judgment. (Doc. 40.) The motion is fully briefed and ready for consideration.[1] For the reasons set forth below, the motion will be granted and the action will be dismissed.

I.  BACKGROUND

The facts, viewed in the light most favorable to Valcarcel as

---

[1] After filing his response, Valcarcel filed another letter (Doc. 45), which the court will treat as a surreply. A surreply is not authorized under the court's local rules, see Local Rule 7.3, but can be allowed "when fairness dictates based on new arguments raised in the previous reply." DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010). Here, Valcarcel does not note any new arguments to which he is responding, and thus the court will not consider his surreply.

the non-moving party, are as follows:

Valcarcel is a white male, American-born, who worked as an at-will employee of ABM from September of 2012 until he was terminated in October of 2015 at approximately age 57.[2] (Doc. 2-1 at 46–48; Doc. 40-1 at 12, 39, 68.) ABM maintains policies concerning discrimination in the workplace that are distributed to new employees when they are hired and are posted in the workplace.[3]

---

[2] ABM and Valcarcel disagree over whether Valcarcel was employed as a "Project Manager" or a "Quality Control Janitor." The record is also unclear as to his precise age at the time of his termination, with references to both age 57 and 59. These disputes are not material to resolution of this motion.

[3] In his deposition, Valcarcel denied that the signature on a document (marked as exhibit 7) entitled "Employee Instructions, Information and Work Rules" was his. (Doc. 40-1 at 49, 50.) Whether Valcarcel signed the form describing ABM's nondiscrimination policies is not material and does not alter the fact that ABM maintained this policy. In any event, Valcarcel stated in his deposition that the document describes the company's prohibition on discrimination and that he knew of the company's policy:

> Q. Prior to your employment beginning at ABM, do you remember signing a number of documents?
>
> A. Oh, I probably did. I probably signed a bunch of stuff with Chad, you know. I don't remember off the top of my head what they were.
>
> Q. In looking — looking at paragraph one of this Exhibit Seven, it talks about discrimination or harassment of employees based on a number of different bases is strictly prohibited —
>
> A. Right.
>
> Q. — at the company, correct?
>
> A. Oh, of course.
>
> Q. And you knew that, right?

(Doc. 40-1 at 80–85; Doc. 40-2 ¶ 4.) ABM's "Employee Instructions, Information, and Work Rules" states that discrimination against, or harassment of any employee on the basis of race, color, national origin or ancestry, amnesty, or any other consideration made unlawful by federal, state, or local laws will not be tolerated and is prohibited, as well as that "[f]ailure to observe any of the above rules may be cause for termination." (Doc. 40-1 at 80–81.) ABM also maintains a toll-free hotline for employees to report complaints of alleged discrimination, harassment, or retaliation. (Id. at 80; Doc. 40-2 ¶ 4.)

Valcarcel's first supervisor was ABM Project Manager Chad Chadwick, and after Chadwick left ABM, his supervisor was Project Manager Nadia Moreno. (Doc. 40-2 ¶ 5; Doc. 40-3 ¶ 2.) Both Chadwick and Moreno reported to Ben Dodds, Senior Regional Director of Technology and Manufacturing for ABM's operations in North Carolina, who is sometimes referred to as the North Carolina branch manager. (Doc. 40-2 ¶¶ 1, 5.)

In September or early October 2015, Vanessa Zamora[4], an ABM employee, reported to Moreno that Valcarcel had made statements

---

A. Oh, yes. Oh, yeah. I didn't have to sign it to know this. (Doc. 40-1 at 50.)

[4] The court earlier referred to this employee as "Samora" (Doc. 20) based on Valcarcel's incorrect spelling in his letter to the EEOC attached to the complaint. (Doc. 2-1 at 19–20.)

that offended her.[5]  (Doc. 40-2 ¶ 6; Doc. 40-3 ¶ 3.)  Upon Moreno's request, Zamora wrote a written statement about the incident, and Moreno sent the statement to Dodds, her supervisor.  (Doc. 40-3 ¶ 3.)  Valcarcel's comments, as reported in Zamora's written statement, accused Zamora of not being a citizen and referred to marks on her back from crawling under a fence to enter the country:

> [Valcarcel and a security guard] had a conversation about voting elections.  They started saying that they were gonna vote for Donald Trump the [sic] explained there [sic] reasons to me.  But what made me feel really bad was when Pat ask [sic] me a very rude question.  He ask [sic] me how did I get my papers?  [And] if they were fake.  That maybe [Moreno] had printed they [sic] off the computer for me. . . .  I told them they wasn't fake.  [Valcarcel] replied with look at your back from where you came under the fence. . . .  I just really dislike how they said it in the lobby in front of people that were waiting to get on the elevator.

(Doc. 40-1 at 86; see Doc. 40-2 ¶ 6.)  Moreno, ABM human resources representative Loretta Renteria, and Dodds discussed how to investigate and respond to the situation and decided that Moreno should meet with Valcarcel to determine whether he had engaged in the conversation described in Zamora's statement.  (Doc. 40-2 ¶ 6; Doc. 40-3 ¶ 3.)  Moreno informed Valcarcel that his employment was terminated due to his inappropriate statements.  (Doc. 40-2 ¶ 6;

---

[5] ABM has produced the statement Zamora prepared (Doc. 40-1 at 86), and both Moreno and Dodds testified in their declarations that Zamora's report of Valcarcel's statements were the reason that Valcarcel was terminated.  (Doc. 40-2 ¶ 6, Doc. 40-3 ¶ 3.)  Valcarcel disputes that he made comments to Zamora.  (Doc. 40-1 at 52.)  Nevertheless, he does not dispute that he was informed by his supervisors that the matter was being reviewed by Human Resources and that the alleged comments were ABM's stated reason for his termination.  (Doc. 40-1 at 52-53, 55.)

Doc. 40-3 ¶ 3.) Valcarcel testified at his deposition that Moreno told him he was being fired for being a racist and making a statement about President Donald Trump, and that he refused to leave the building until he spoke with Dodds. (Doc. 40-1 at 23-24, 26-27.) Moreno called Dodds, and Dodds told Valcarcel that his employment was terminated because of the inappropriate statements Zamora reported he made about her. (Doc. 40-1 at 23, 29; Doc. 40-2 ¶ 6; Doc. 40-3 ¶ 3.)

## II. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Basnight v. Diamond Developers, Inc., 146 F. Supp. 2d 754, 760 (M.D.N.C. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In determining a motion for summary judgment, the court views the "evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences." Id. Summary judgment should be denied "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail

5

under any circumstances." Guessford v. Pa. Nat. Mut. Cas. Ins. Co., 983 F. Supp. 2d 652, 659 (M.D.N.C. 2013) (quoting Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994)).

Valcarcel proceeds pro se. "When reviewing a pro se complaint, federal courts should examine carefully the plaintiff's factual allegations, no matter how inartfully pleaded, to determine whether they could provide a basis for relief." Armstrong v. Rolm A. Siemans Co., 129 F.3d 1258, *1 (4th Cir. 1997) (citations omitted) (unpublished table opinion). However, the liberal construction of a pro se plaintiff's pleading does not require the court to ignore clear defects in pleading, Bustos v. Chamberlain, No. 3:09-1760, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to "conjure up questions never squarely presented in the complaint," Brice v. Jenkins, 489 F.Supp.2d 538, 541 (E.D. Va. 2007) (internal quotation marks and citation omitted). Nor does it require that the court become an advocate for the unrepresented party. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

**B. Title VII Race and National Origin Discrimination**

The court will consider the race and national origin claims at the same time, because Valcarcel's deposition frequently conflated the claims and ABM briefed them together.

Title VII prohibits employment discrimination based on race and national origin. A plaintiff may prove discrimination under

6

Title VII "either through direct and indirect evidence of [discriminatory] animus, or through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Foster v. Univ. of Md. - E. Shore, 787 F.3d 243, 249 (4th Cir. 2015), abrogated on other grounds by Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013)).

Valcarcel has not produced any direct evidence of discrimination based on race or national origin. In fact, he admitted in his deposition that he has no proof of discrimination based on any protected category, no one employed at ABM at the time of his termination has information that would indicate that he was terminated because he was white or American, he has not spoken with any potential witnesses, and his evidence is circumstantial. (Doc. 40-1 at 6–7, 24, 55 ("Q. Did anybody at ABM ever tell you that any decision made about your employment had to do with your race? A. Oh, no."), 62, 63 (stating that no one told him he was fired because of his national origin), 74.) When asked at his deposition whether he believes that Dodds made any decisions about his employment because he was a white American, Valcarcel responded that he had "no idea." (Doc. 40-1 at 24.) When asked if he has any evidence at all to substantiate his assumption that Moreno had a problem with him because he is a white American, Valcarcel responded: "I have no proof of anything other than she terminated me, but it — Ben Dodds did give her the okay,

7

and so did Human Resources." (Doc. 40-1 at 24.) Thus, Valcarcel can proceed, if at all, through the McDonnell Douglas burden-shifting framework. Foster, 787 F.3d at 249.

To establish a prima facie claim of discriminatory termination based on race or national origin, a plaintiff must present facts demonstrating (1) that plaintiff was a member in a protected class, (2) that he was terminated, (3) that at the time of the termination, he was performing at a level that met the employer's legitimate expectations, and (4) that the position was filled by a similarly-qualified applicant from outside the protected class. Chang Lim v. Azar, 310 F. Supp.3d 588, 601 (D. Md. 2018) (citing King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003)); see Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005). If the plaintiff establishes a prima facie case, "'the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action,' and this burden on the employer is one of production, not persuasion." Neal v. Green Ford, LLC, No. 1:17-cv-569, 2018 WL 6003547, at *5 (M.D.N.C. Nov. 15, 2018) (quoting Holland v. Wash. Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007)), aff'd, 763 F. App'x 331 (4th Cir. 2019) (per curiam).

Valcarcel clearly satisfies the first and second elements of the McDonnell Douglas test. ABM does not dispute that he is a

member of a protected class based on his race and national origin.[6] See Causey v. Balog, 162 F.3d 795 (4th Cir. 1998) (considering a Title VII discrimination claim brought by a white plaintiff); McMillian v. Lab. Corp. of Am., 399 F. Supp. 2d 670, 672 (M.D.N.C. 2005) (considering Title VII national origin discrimination claim of an American-born plaintiff); Tansey v. Tex. A & M Int'l Univ., No. L-06-83, 2009 WL 801768, at *5–6 & n.3 (considering Title VII national origin discrimination claim of an American-born white plaintiff where defendants conceded that the plaintiff was a member of a protected class). The parties do not dispute that Valcarcel was terminated. Valcarcel has also likely satisfied the fourth factor because ABM admitted in its response to Valcarcel's EEOC Charge of Discrimination that Valcarcel was replaced by a 30-year-

---

[6] Courts have not been consistent in treating "Hispanics" as a national origin or race class. Compare E.E.O.C. v. PBM Graphics, Inc., 877 F. Supp. 2d 334, 344 (M.D.N.C. 2012) (treating "non-Hispanic" as a protected national origin class), with Sanders v. Tikras Tech. Sols. Corp., 725 F. App'x 228, 230 (4th Cir. 2018) (noting, for a Title VII race discrimination claim brought by an African-American female, that the plaintiff was replaced by a Hispanic male, but finding that the two were not similarly situated because the replacement had more experience than the plaintiff), and E.E.O.C. v. Phase 2 Invs. Inc., 310 F. Supp. 3d 550, 567 (D. Md. 2018) (construing Title VII discrimination allegations for a class described as "Hispanic" as a race discrimination claim instead of a national origin claim, because "[t]he term 'Hispanic' does not describe a nation. It is not even a clear geographical area. Unlike say 'European' which could perhaps refer to a perceived racial class or a continent of origin, 'Hispanics,' in the eyes of the Census Bureau at least . . . can be of any race, any ancestry, any country of origin." (internal brackets and quotation marks omitted)). Here, it does not matter whether Hispanic describes a race or national origin, as Valcarcel has failed to show that he was meeting ABM's expectations and, even assuming a prima facie case, he has no evidence that ABM's legitimate nondiscriminatory reason for terminating him was pretextual.

9

old Hispanic male. (Doc. 2-1 at 50.)[7]

Valcarcel fails to establish a prima facie claim, however, because he has not shown that at the time of his termination he was performing at a level that met ABM's legitimate expectations. In determining whether he was performing satisfactorily, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000) (brackets omitted); King, 328 F.3d at 149 ("[The plaintiff's] own testimony, of course, cannot establish a genuine issue as to whether [plaintiff] was meeting [the employer's] expectations.") There were several incidents leading up to Varcarcel's termination showing unsatisfactory job performance. Valcarcel improperly attempted to reprimand and terminate another employee and was told by his supervisor, Moreno, that he did not have the authority to reprimand or terminate other employees[8] (Doc. 40-1 at 48, 56; Doc. 40-2 ¶ 5, Doc. 40-3 ¶ 2);

---

[7] ABM argues, citing to Hurst v. District of Columbia, 681 F. App'x 186, 191–93 (4th Cir. 2017), that Valcarcel's prima facie case fails because he has failed to show that the was treated differently from others outside the protected class through the use of similarly situated comparators. (Doc. 41 at 17.) Hurst was a Title VII case based on the enforcement of employee disciplinary measures, and thus the prima facie elements of discrimination differed from the elements of a discriminatory termination claim. Hurst, 681 F. App'x at 190. If the court applied this factor, Valcarcel's prima facie case would fail on this element, because he has not produced evidence of similarly situated employees who were disciplined differently for similar conduct. Id. at 190–93. In any event, his claim fails because he has not produced evidence that ABM's legitimate nondiscriminatory reason for terminating him was pretextual.

[8] In his deposition, Valcarcel asserted that he had the authority to fire

employees and stated that when Moreno explained to him that he lacked the authority to hire, fire, or discipline people, he disputed it:

> Q. And in regards to hiring, firing, and disciplining your people, Nadia Moreno explained to you that you didn't have the authority; is that correct?
>
> A. She said I didn't, and I said I do have it. I said, unless this is something new that has changed, I do have that authority. You can ask — again, I revert back to Chad Chadwick, who is the one who told me all this. If I didn't have it, he wouldn't have said hire people, if you want them. If you don't want them, don't hire them, and fire the people that you want to fire. Even when I fired the two people I did, I didn't fire them from the company. I said I think they're burned out here, and I said hire them somewhere else, and they, as far as I know, were working not only at that company that makes that — Corning — but they also — I had them come back and fill in for me at my building again.
>
> . . .
>
> Q. At any rate, regardless of whether Chad Chadwick was there, Nadia Moreno was your supervisor at that time, correct?
>
> A. Well, I believe so.

(Doc. 40-1 at 48–49; see id. at 56–59.) The declarations of both of Valcarcel's supervisors, Moreno and Dodds, state that his position lacks the authority to hire, fire, or alter the terms and conditions of employment at ABM. (Doc. 40-2 ¶ 5; Doc. 40-3 ¶ 2.)

Valcarcel acknowledges that his supervisor told him that his position lacked the authority to fire individuals. (Doc. 40-1 at 48.) Valcarcel claims that Chadwick, his former boss who was replaced by Moreno, told him he had such authority (id.); but this is obviously inadmissible hearsay, and Valcarcel did not provide any admissible testimony from Chadwick. Valcarcel further argues in his response brief that the "Job Offer Confirmation" page attached to his deposition (as exhibit 5) was "obviously altered by a third party" because the "Job Working Title" section has "Project Manager" crossed out and "Quality Control Janitor per email" is written in the "Job Type" section in seemingly different handwriting. (Doc. 43 at 3, 6; Doc. 40-1 at 78.) Notwithstanding, he testified that the signature at the bottom of the page is "probably" his, although he also said that he had never seen the form with "Quality Control Janitor per e-mail" written in. (Doc. 40-1 at 46–47.)

Whether his job title was "project manager" or "quality control janitor" and whether he actually had the authority to reprimand or fire other employees is not material to whether Valcarcel was performing satisfactorily. It is the perception of the employer that matters. Hawkins, 203 F.3d at 280. It is undisputed that he was told by his

11

when told by Moreno that he could not terminate anyone because he lacked authority to fire employees, Valcarcel emailed Moreno to tell her he was going to terminate the employee anyway (Doc. 2-1 at 43; Doc. 40-1 at 48, 56–58); Moreno received a complaint that he made race-based comments to another employee that violated ABM's policy against discrimination (Doc. 40-2 ¶¶ 4, 6; Doc. 40-3 ¶ 3); Valcarcel admits in his deposition that he made an inappropriate comment at work, exclaiming in the lobby of a building, "I don't do anything, I guess if I was Black I'd be fired!," and that this statement generated a complaint from ABM's client (Doc. 40-1 at 66–67, 87). These incidents are sufficient to show that Valcarcel's job performance was not satisfactory at the time he was terminated. See Baqir v. Principi, 434 F.3d 733, 743–44 (4th Cir. 2006); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 517–18 (4th Cir. 2006).

Moreover, even if Valcarcel could establish a prima facie case, ABM has produced a legitimate nondiscriminatory reason for his termination, and there is no evidence that this reason was pretextual. An employer need not demonstrate that its reasons for terminating the employee were "'wise, fair, or even correct,' but simply that its reasons for taking the action were truly the reason

---

supervisor, Moreno, that he lacked the authority to discipline or fire others, he argued about this with her, and he told her he would not listen to her. (Doc. 40-1 at 48, 56–58.)

for the plaintiff's termination." Neal, 2018 WL 6003547, at *6 (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 298–99 (4th Cir. 1998) (stating that courts do "not sit as a kind of super-personnel department weighing the prudence of employment decisions" (quotation marks omitted)); citing Hawkins, 203 F.3d at 279.) According to the sworn declarations of both of his supervisors, Dodds and Moreno, Valcarcel was terminated pursuant to ABM's zero-tolerance nondiscrimination policy for inappropriate statements he made to his coworker, Zamora, regarding her citizenship. (Doc. 40-2 ¶¶ 6, 7; Doc. 40-3 ¶¶ 3, 4.) In his deposition, Valcarcel acknowledges that ABM terminated him based on its belief that he had made these comments. (Doc. 40-1 at 55 ("Q. But ABM believed that you had said these things to Jessica [sic] Zamora, correct? A. I guess they did. They terminated me for it without speaking to me.").)

Valcarcel has not pointed to any evidence to suggest that ABM's reason for terminating him was pretextual. See Causey, 162 F.3d at 801. Valcarcel claims that ABM fired him because of his race or national origin are purely speculative. (See, e.g., Doc. 40-1 at 22–24, 33–35, 60, 74.) His mere supposition of discrimination, absent proof, is insufficient to survive summary judgment. Therefore, ABM's motion for summary judgment as to Valcarcel's Title VII claims for race and national origin discrimination will be granted.

13

**C. Age Discrimination**

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age" when the individual is at least 40 years old. 29 U.S.C.§§ 623(a), 631. An employee who alleges that his employer violated this prohibition "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009). When considering ADEA claims grounded in circumstantial evidence, the court uses the McDonnell Douglas burden-shifting framework. Westmoreland v. TWC Admin. LLC, No. 18-1600, 2019 WL 2195164, at *3 (4th Cir. May 22, 2019).

As there is no direct evidence of age discrimination, Valcarcel must proceed pursuant to the burden-shifting framework. (See Doc. 40-1 at 31, 63 (stating in his deposition that no one told him he was fired because of his age), 75 ("Q. And of the people identified on Exhibit 12, who would have information to substantiate your claim that ABM terminated you because of your age? A. Nobody.").)

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show (1) he was a member of the protected age group (i.e., over the age of forty); (2) he was discharged or demoted; (3) at the time of discharge or demotion he was performing

14

his job at a level that met his employer's legitimate expectations; and (4) following his discharge or demotion, he was replaced by someone of comparable qualifications outside the protected class or substantially younger.[9] Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996); Westmoreland, 2019 WL 2195164, at *4. Upon a showing of a prima facie case, the burden shifts to the employer to produce a legitimate nondiscriminatory reason for its decision. Westmoreland, 2019 WL 2195164, at *4 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). When the employer produces a legitimate nondiscriminatory reason, the burden shifts to Valcarcel to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant[-employer] were not its true reasons, but were a pretext for discrimination." Id. (quoting Burdine, 450 U.S. at 253). "The ultimate burden of persuading the trier of fact remains with the employee at all times." Id. (quotation marks omitted).

There is no dispute that Valcarcel has established the first two elements of a prima facie case: he was over 40 years old[10] at

---

[9] "In an ADEA case, the plaintiff need not be replaced by someone outside the protected class (i.e., someone under 40), provided that the replacement is younger than the plaintiff." Neal, 2018 WL 6003547, at *6 n.9 (citing Burns v. AAF-McQuay, Inc. 96 F.3d 728, 731 n.1 (4th Cir. 1996); Laprise v. Arrow Intern., 178 F. Supp. 2d 597, 605 n.8 (M.D.N.C. 2001)).

[10] In its brief, ABM states that Valcarcel was 57 at the time of his termination. (Doc. 41 at 1, 7.) But Valcarcel lists his date of birth

15

the time of termination and thus falls within the ADEA's protection for "individuals who are at least 40 years of age," 29 U.S.C. § 631, and he was discharged from his employment. ABM also does not dispute that following his discharge, he was replaced by someone outside the protected class. (Doc. 2-1 at 50; Doc. 40-1 at 31.)

For the same reasons noted for Valcarcel's race and national origin claims, Valcarcel fails to establish the third element of a prima facie case, because the evidence shows that he was not performing his job at a level that met his employer's legitimate expectations at the time he was terminated. Moreover, even if he could establish a prima facie case of age discrimination, ABM has produced the same legitimate nondiscriminatory reason for his termination – that he was terminated based on Zamora's complaint that he made inappropriate comments about her. There is no evidence to suggest that this reason was pretextual. (See Doc. 40-1 at 30–31, 63, 75.) Therefore, ABM's motion for summary judgment as to Valcarcel's claim for age discrimination will be granted.[11]

---

in his EEOC Charge of Discrimination and in his complaint as September, 1956, and his date of termination as October 2015, which would make his age 59 at the time of his termination. (Doc. 2 at 4; Doc. 2-1 at 13.) As noted earlier, either way Valcarcel was over the age of 40 at the time of his termination, and thus any dispute over his exact age does not preclude the court from deciding the present motion.

[11] Because the court grants ABM's motion for summary judgment as to Valcarcel's Title VII and ADEA claims, it need not reach ABM's alternate

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that ABM's motion for summary judgment (Doc. 40) is GRANTED and this action is DISMISSED WITH PREJUDICE.

/s/ Thomas D. Schroeder<br>United States District Judge

June 7, 2019

---

argument that Valcarcel is not entitled to back pay. (Doc. 41 at 20–21.)